# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Shirley McClure,
     Plaintiff

     vs                          Case No. C-1-01-751
                                      (Beckwith, J.; Hogan, M. J.)

Gannett Media Technologies,
International, Inc., et. al.
     Defendants

_____

## REPORT AND RECOMMENDATION
_____

     This matter is before the Court on the summary judgment motion filed by defendants Gannett Media Technologies, International, Inc. and Gannett Co., Inc. (Doc. 51), pro se plaintiff Shirley McClure's memorandum in opposition (Doc. 61), and defendants' reply.  (Doc. 63).

## UNDISPUTED FACTS

     In mid-October 1998, pro se plaintiff McClure, who was employed by Office Team, a temporary employment agency, began working at defendant Gannett Media Technologies, International, Inc. (GMTI) as an administrative assistant. (Doc. 51, defendant's summary judgment motion, Ex. 1, Deposition of Shirley McClure, pp. 59-63, attached).  Defendant Gannett Co., Inc. is the parent company of GMTI.  In mid-January 1999, plaintiff notified GMTI that she was planning to leave her assignment

and pursue a permanent position elsewhere.  (Depo. pp. 59, 79).  Plaintiff testified that Office Team policy required her to give a week's notice to a current temporary assignment if she planned to leave the assignment before it was completed.  (Depo. p. 79).  Following plaintiff's "notice' to GMTI, defendant offered plaintiff full-time employment with GMTI as a receptionist.  (Depo. pp. 84-85).

Plaintiff was aware through her work at GMTI as a temporary employee for Office Team that defendant's regular business hours were 8:30 a.m. to 5:30 p.m. (Depo. pp. 68-71).    Plaintiff also knew that GMTI required its receptionists to work from 8:30 a.m. to 5:30 p.m.  (Depo. pp. 82-83).  Plaintiff testified that she did not want to work past 5:00 p.m., and consequently  declined defendant's initial verbal offer of permanent employment.  (Depo. p. 86).  A couple of days later, Edgar Lugo, a member of defendant's Human Resources department, informed plaintiff that defendant might be able to accommodate her preference to work from 8 a.m. to 5 p.m., rather than defendant's normal business hours.  (Depo. pp. 86-88).  Plaintiff and Lugo also discussed other terms of the position, including salary and benefits.  Plaintiff testified that she subsequently had a conversation with Dan Zito, President and CEO of GMTI, in which he confirmed that Lugo was authorized to offer plaintiff a permanent position with working hours that differed from defendant's regular business hours.  (Id.).  Sometime thereafter, plaintiff told Zito she would accept the position.  (Id.).  Plaintiff testified that her decision to accept the position was based on defendant's representation that her working hours would be from 8:00 a.m. to 5:00 p.m.  (Depo. pp. 109-110).  Defendant GMTI made plaintiff a written offer of employment on January 18, 1999, which plaintiff accepted as indicated by her signature on the letter.  (Doc. 51, Ex. 2).  The letter does not address the work hours

required for the position.  (Id.).

In early October 1999, Natalie Dennis began monitoring the number of calls that came into GMTI between 5:00 and 5:30 p.m. in an effort to determine whether the company needed to change plaintiff's working hours to conform with GMTI's regular business hours.  (Doc. 51, Ex. 3, Declaration of Natalie Dennis, ¶ 3, attached).  After monitoring the telephone calls during the month of October, Dennis determined that defendant's business needs required that plaintiff's working hours be changed so that they would conform with GMTI's normal business hours.  (Id., ¶ 4).   On November 1, 1999, Dennis informed plaintiff that she would be required to work from 8:30 a.m. to 5:30 p.m.  (Id.).  Plaintiff refused to change her work hours, believing that she had an agreement with Zito that entitled her to work from 8:00 a.m. until 5:00 p.m. for the duration of her employment with defendant GMTI.  Acting under Zito's authority, Dennis terminated plaintiff's employment after plaintiff indicated that she would not agree to alter her working schedule to conform with defendant GMTI's regular business hours.  Plaintiff's last day of employment at GMTI was November 1, 1999.  The following day, plaintiff sent Zito an e-mail message conveying her version of the events surrounding her dismissal by Dennis.  (Depo. pp. 116-17, 123.  See also Ex. 4).  Plaintiff testified that in response to her e-mail message, Zito sent plaintiff a reply e-mail in which he confirmed that Dennis was operating with his authority when she discharged plaintiff, and that Zito considered plaintiff's refusal to change her work hours to conform with the needs and regular business hours of the company to be a form of insubordination.  (Depo. pp. 120, 126-34, Ex. 4).

**DEFENDANT'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912

4

F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## The Evidence Is Insufficient to Support a Promissory Estoppel Exception to Ohio's Employment-at-will Doctrine

Under Ohio law, an employee who is hired for an indefinite period of time is an employee at will. *Henkel v. Educational Research Council of America*, 45 Ohio St.2d 249, 344 N.E.2d 118, syllabus (1976). Either party to an at-will employment agreement may terminate the relationship, and the employee is subject to discharge at any time for any reason not contrary to law. *Id.* at 255, 344 N.E.2d at 122. An employment contract is presumptively at-will unless facts and circumstances indicate that the agreement is for a specific term. *Id.* In 1985, the Ohio Supreme Court rejected a request to abandon the employment-at-will doctrine. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150, 153-54 (1985). In doing so, however, it recognized that "there are occasions when exceptions to the general rule

are recognized in the interest of justice." *Id*. Two such exceptions are: (1) the existence of express or implied contractual provisions that alter the terms of discharge; and, (2) the existence of promissory estoppel stemming from promises made to the employee regarding the terms of discharge. *Id.* at 104, 483 N.E.2d at 154. To prove a claim for promissory estoppel in the employment context, a plaintiff must demonstrate (1) that the employer made a promise; (2) which it reasonably should have expected to induce action or forebearance by the employee; (3) that there was such action or forebearance; and (4) injustice can only be avoided by enforcement of the promise. *Id.*

"To maintain a promissory estoppel claim, an at-will employee must allege 'detrimental reliance' on a specific promise of job security." *Gouge v. BAX Global Inc.*, 252 F. Supp.2d 509, 518 (N.D. Ohio 2003)(quoting *Wing v. Anchor Media, Ltd. of Texas* 59 Ohio St.3d 108, 570 N.E.2d 1095 (Ohio 1991)). The promise must be both clear and unambiguous by its terms, and plaintiff's detrimental reliance thereon must be justified and reasonable. *Id.* at 519 (citing *Rudy v. Loral Defense Systems*, 85 Ohio App.3d 148, 154, 619 N.E.2d 449 (Ohio Ct. App. 1993); *Penwell v. Amherst Hosp.*, 84 Ohio App.3d 16, 19, 616 N.E.2d 254 (Ohio Ct. App. 1992)). However, "a promise of future benefits of opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine." *Shaw v. J. Pollock & Co.*, 82 Ohio App. 3d 656, 660, 612 N.E.2d 1295, 1298 (Ohio Ct. App. 1992)(citing *Wing, supra*, paragraph two of the syllabus). Thus, an employment contract which provides for an annual rate of pay, but makes no provision for the duration of employment, is terminable at the will of either party unless the facts and circumstances indicate otherwise. *Henkel*, 45 Ohio St.2d 249, 344

N.E.2d 118 at syllabus.

Plaintiff argues that defendant GMTI should be estopped from discharging her because she relied on defendant Zito's promise that she could work from 8:00 a.m. to 5:00 p.m., rather than defendant's regular business hours, when she agreed to accept defendant's offer of full-time employment as a receptionist. Plaintiff claims that but for Zito's promise regarding her working hours, plaintiff would not have accepted the position at GMTI. Plaintiff testified that the agreement to alter her work hours represented a permanent change and was not for a trial period, (Depo. pp. 127-30), and defendants have not offered any evidence to dispute that assertion. Nevertheless, the Court finds that the promise to change plaintiff's work hours made by defendant GMTI cannot, as a matter of law, support a promissory estoppel exception to Ohio at-will employment doctrine. Assuming arguendo that GMTI did promise that plaintiff could work from 8:00 a.m. to 5:00 p.m. for the duration of her employment, rather than the company's normal business hours, such a promise is not a "specific promise of job security." The agreement to which plaintiff refers did not promise employment for any specific term, but was merely a promise of a future benefit to plaintiff, to wit: the opportunity to work an altered schedule. Assuming the parties entered into an agreement which provided for both an annual rate of pay and work hours, that agreement is still terminable at the will of either party. *See Henkel*, 45 Ohio St.2d 249, 344 N.E.2d 118 at syllabus.

Moreover, plaintiff's reliance on GMTI's promise of altered work hours was neither reasonable nor detrimental. A promissory estoppel claim requires "some representation by the employer which may reasonably be interpreted as limiting the

7

employer's ability to terminate the employee at will." *Maxwell v. GTE Wireless Service Corp.*, 121 F. Supp.2d 649, 661 (N.D. Ohio 2000). GMTI's promise of certain work hours could not reasonably lead plaintiff to believe that defendant had altered her at-will employment status. Plaintiff admits as much in her deposition testimony. (See depo. pp. 158-60).

Nor has plaintiff demonstrated any detrimental reliance on defendant GMTI's promise. Plaintiff argues that she would not have taken the permanent position with GMTI but for the company's promise that she could work from 8:00 a.m. to 5:00 p.m., and that this constitutes detrimental reliance on the promise. Plaintiff has not offered testimony or evidence of any other form of detrimental reliance in support of her claim. Plaintiff testified that she was not actively seeking employment during the course of her temporary assignment at GMTI, but that she "gave notice' to GMTI because she intended to commence a job search for a permanent position. Plaintiff also concedes that at the time she accepted GMTI's job offer she did not have any other job offers pending. Because plaintiff did not cease a job search, but rather refrained from commencing one, this evidence is legally insufficient to support plaintiff's promissory estoppel claim. *See Wing*, 570 N.E.2d at 1099; *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1041-42 (6th Cir. 1992); *Snyder v. AG Trucking, Inc.*, 57 F.3d 484, 488 (6th Cir. 1995).

The question in this case is not whether defendant GMTI made a promise that it subsequently broke, but whether defendant made a clear and unambiguous promise with respect to plaintiff's employment such that an exception to the doctrine of employment-at-will is created. Plaintiff has failed to demonstrate that defendant made

a specific promise of job security or that she reasonably relied on such a promise to her detriment.  For these reasons, defendant's motion should be granted with respect to plaintiff's promissory estoppel claim.

### There Are No Genuine Issues of Material Fact Which Preclude Summary Judgment on Plaintiff's Defamation Claim

Plaintiff alleges that defendants defamed her based on a written statement by Zito that plaintiff's refusal to alter her work hours to conform with the GMTI's normal business hours "became a situation of insubordination."  Defendants contend that the statement cannot support a defamation claim because the statement was not published to a third-party, the statement was true and or an opinion, and plaintiff did not suffer any actual harm or damages as a result of the statement.  In reply, plaintiff argues that defendant communicated the statement to the Ohio Bureau of Unemployment Compensation and that plaintiff suffered actual damages when the Bureau denied her claim for unemployment benefits.

Defamation is a false publication that injures a person's reputation.  *Dale v. Ohio Civil Service Emp. Ass'n*, 567 N.E.2d 253, 257-58 (Ohio 1991).  Under Ohio law, a cause of action for defamation consists of the following five elements: (1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff.  *Gosden v. Louis*, 687 N.E.2d 481, 488 (Ohio Ct. App. 1996); *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992).  A written statement is libelous *pe se* if it reflects upon a person's character in such a manner that causes him to be ridiculed, hated, held in contempt, or in a manner that injures him in

9

his trade or profession, including words which impute disloyalty or insubordination to his employer. *Hahn v. Kotten*, 331 N.E.2d 713, (Ohio 1975); *Becker v. Toulmin*, 138 N.E.2d 391, 395 (Ohio 1956); 35 Ohio Jurisprudence, Defamation & Privacy, 478, 479, § 36 (3d. Ed. 1982).

Zito's statement that plaintiff's refusal to change her work hours "became a situation of insubordination," imputes disloyalty to plaintiff's employer. Therefore, the court may find that this statement constitutes libel *per se*. Nevertheless, plaintiff has not presented sufficient evidence to support a defamation claim. Assuming that the statement made by Zito is libel *per se*, there is no evidence that it was published without privilege to a third party. Zito's written statement was contained in a reply email that was sent by Zito to plaintiff in response to an email she sent him the day after she was discharged.

The only evidence that plaintiff offers to support her claim that Zito published this statement to a third party is plaintiff's testimony that the Ohio Bureau of Unemployment Compensation advised her that her claim for unemployment benefits was denied because she had been fired for insubordination. Plaintiff argues that the Court can infer that the Bureau reached this conclusion based on the publication of a statement to that effect from GMTI and or Zito. However, Ohio accords an absolute privilege to communications made during unemployment proceedings on the grounds that they are quasi-judicial in nature. *Baldwin v. Adidas America, Inc.*, Case No. C2-02-265, 2002 WL *2012562 (S.D.Ohio, July 29, 2002) (Graham, J.). *See also Barilla v. Patella*, 144 Ohio App.3d 524, 760 N.E.2d 898, 906 (Ohio Ct. App.2001) ("Communications made during unemployment proceedings, which are quasi-judicial

in nature, are subject to an absolute privilege, and may not be used in subsequent actions.") To the same effect is *Horsley v. Wal-Mart, Inc.*, No. 97 1997, Ohio App. LEXIS 5988, at *4 (Ohio Ct. App. Dec. 23, 1997)("Statements made in conjunction with the unemployment compensation hearings are made in the course of quasi-judicial proceedings. Statements made during judicial proceedings are afforded an absolute privilege when they are relevant to the issues at hand."). There are no genuine issues of material fact with respect to the third element of a defamation claim. In the absence of evidence tending to demonstrate that the defamatory statement was published without privilege to a third party- plaintiff cannot maintain her defamation claims and defendants' summary judgment motion should be granted.

Because there is not sufficient evidence to support either a promissory estoppel or defamation claim against defendant GMTI, there is clearly no basis to hold defendant Gannet Co., Inc. liable, and summary judgment should likewise be granted in defendants' favor on all claims against this defendant.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' summary judgment motion be granted and this case be terminated from the docket of this Court.

  s/ Timothy S. Hogan
Timothy S. Hogan
United States Magistrate Judge

01-751 McClure msj.wpd
lww/TSH
September 3, 2003

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Shirley McClure,
     Plaintiff

    vs                            Case No. C-1-01-751
                                    (Beckwith, J.; Hogan, M. J.)

Gannett Media Technologies,
International, Inc., et. al.
     Defendants

## NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 9/7/03 . Any party may object to the Magistrate's findings, recommendations, and report within fifteen (15) days after the filing date of this report and recommendation or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.