```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

Shirley A. McClure,              :
                                            CASE NO. C-1-01-751
    Plaintiff,                   :

v.                               :

Gannett Media Technologies       :
International, Inc., et
al.,                             :

    Defendants

ORDER

Before the Court are Plaintiff's objections (Doc. 75) to the Magistrate's Report and Recommendation of September 7, 2003, and Defendants' response thereto (Doc. 76).  Plaintiff also filed a motion to recuse the Magistrate Judge (Doc. 73), "objections" to this Court's August 27, 2003 Order (Doc. 72), and objections to the Magistrate's Report and Recommendation of July 29, 2003 (Doc. 71).

BACKGROUND

This case arises from Plaintiff's discharge from her job with Defendant Gannett Media Technologies International (GMTI).  Plaintiff was sent to GMTI in October 1998 on assignment as a temporary employee.  Plaintiff was employed at that time by Office Team, a temporary employment agency, but she was looking for a permanent job.  A GMTI representative discussed with Plaintiff the possibility of taking a receptionist position at the company, but Plaintiff said she was not interested because

1

the receptionist job hours were 8:30 a.m. to 5:30 p.m. (McClure Depo. p. 82-86) Plaintiff wanted to work from 8 a.m. to 5 p.m.

In January 1999, Plaintiff notified GMTI and Office Team that she wanted a different assignment, because GMTI had not offered her a full time job with her preferred hours. Edgar Lugo, GMTI's temporary human resources manager, told Plaintiff that GMTI "might be able" to let her work from 8 to 5, even though GMTI's regular business hours were 8:30 a.m. to 5:30 p.m. Plaintiff then spoke with Dan Zito, the President and CEO of GMTI, who confirmed that Lugo had his approval to extend a job offer, including working the hours of 8 a.m. to 5 p.m. (McClure Depo. pp. 87-88)

On January 18, 1999, Plaintiff began full-time employment with GMTI. She signed a letter agreement confirming GMTI's offer of employment. (Compl. Exhibit 15) The letter agreement describes Plaintiff's salary, her status, her benefit package, and a 90 day probation period. The agreement is silent, however, concerning her specific work schedule. According to an internal company email from Lugo dated February 4, 1999, her working hours at that time were 8:00 a.m. to 5:00 p.m. (Compl. Exhibit 14) Plaintiff was apparently a competent employee, and passed the probationary period described in her letter agreement.

Natalie Dennis became GMTI's new head of human resources in the spring of 1999. According to Plaintiff, Dennis disliked her from the outset. In October 1999, Dennis began monitoring the

2

volume of calls coming to the reception desk between the hours of 5 and 5:30 p.m., because Dennis was considering changing Plaintiff's working hours. (McClure Depo. p. 105-106; Dennis Affidavit, Doc. 51, Exhibit 3) On November 1, Dennis told Plaintiff that the company was going to change her hours to 8:30 a.m. to 5:30 p.m. Plaintiff objected. She told Dennis that she had an agreement with Dan Zito that her hours would be 8 a.m. to 5 p.m. Plaintiff also spoke to Dan Zito the morning of November 1, reminding him that his agreement on her working hours was the reason she agreed to take the receptionist job. Plaintiff also spoke with Zito about whether there was a need for coverage on the reception desk after 5 p.m. Zito told Plaintiff to "keep talking to Natalie, and hang in there." Plaintiff hoped that the situation could be worked out to her satisfaction. But at the end of the day on November 1, Dennis told Plaintiff she was terminated because she would not change her hours. (McClure Depo. pp. 110-112)

 The next day, Plaintiff sent an email message to Dan Zito to protest her abrupt termination by Dennis. Zito responded by email, telling Plaintiff that "Once it became apparent that you wouldn't do what we wanted, it became a situation of insubordination and we decided that it would be best to have you end your employment yesterday . . . Natalie has kept me appraised of the situation for the past month or so." (Compl. Exhibit 16)

 After she was terminated, Plaintiff wrote a letter to Gannett Company, Inc. (parent of GMTI), explaining that she was

concerned for her personal safety if she was required to stay past 5 p.m.  She noted that a rape occurred across the street from the GMTI building in the spring of 1999, and that there had been muggings in the garage next door.  Plaintiff also stated that transportation was unreliable after 5 p.m. (Compl. Exhibit 18)

    Plaintiff then applied for unemployment compensation.  Her application was denied because she had been discharged for "insubordination," which the Bureau found was "just cause" under R.C. §4141.29(D)(2)(a).  (Compl. Exhibit 17) Her appeal of the denial of benefits in the Ohio courts was unsuccessful.

Procedural History

    Plaintiff filed her Complaint pro se in this court on October 30, 2001.  She generally alleged that her termination was wrongful, violated the covenant of good faith and fair dealing, breached her hiring agreement, and that GMTI should be estopped from changing her agreement concerning her working hours.[1]  Defendants initially filed a motion to dismiss the Complaint, following which Plaintiff sought entry of default against Gannett Company.  Dissension arose between Plaintiff and defense counsel concerning various discovery issues.  The early procedural history is reviewed in detail in the Court's Order of July 25,

---

[1] She also complained of a civil rights violation, but her pleadings do not identify what constitutional or statutory right may have been violated.  This Court previously found (Doc. 28) that the complaint, considered in the light most favorable to Plaintiff as a pro se litigant, presents only state law claims and that no federal question arises from Plaintiff's allegations.

2002 (Doc. 28), and will not be repeated here.

Following that Order, disputes continued between the parties, leading to Plaintiff's motion for a protective order, her motion for "protection" concerning Plaintiff's scheduled deposition, and several motions concerning depositions of GMTI's witnesses and other discovery issues.  Magistrate Judge Hogan's Order of February 10, 2003 granted Plaintiff additional time to complete discovery and to respond to the Defendants' summary judgment motion, but denied the other relief Plaintiff sought in her various motions.  Plaintiff then filed an affidavit of prejudice concerning Magistrate Judge Hogan (Doc. 66), which the Magistrate Judge construed as a recusal motion and which he denied.  (Doc. 68)  The Magistrate Judge also recommended that this Court deny Plaintiff's motions for a "default" against Defendants' counsel, and for recusal of this Court. (Doc. 69)  When Plaintiff failed to timely object to this Report and Recommendation, this Court adopted the Report and denied both the "default" and recusal. (Doc. 70)  Plaintiff then filed her objections to both the Magistrate Judge's Report and to this Court's Order. (Doc. 71, 72)  Plaintiff also filed a motion to recuse Magistrate Judge Hogan.  (Doc. 73)

In a separate Report, Magistrate Judge Hogan recommended that the Defendants' motion for summary judgment be granted (Doc. 74).  Plaintiff filed timely objections to this Report.  (Doc. 75)

ANALYSIS

5

1. <u>Plaintiff's Objections to this Court's August 27, 2003 Order and the Magistrate's July 29, 2003 Report and Recommendation</u>.

Plaintiff's objections to the Magistrate Judge's Report and Recommendation concerning a "default" against defense counsel and the recusal of the undersigned were not timely filed. In fact, the objections were not filed until September 4, seven days after this Court's Order adopting the Report. 28 U.S.C. §636(b)(1)(C) plainly states that further appeal is waived if objections are not timely filed. While Plaintiff does not deny that she received timely notice of the Report and Recommendation, she asserts in her "Response to Judge Beckwith's Invalid Order of August 27, 2003" (Doc. 72) that she received the Report when she was in the process of moving, and when her computer and documents were boxed and not readily available. Given Mrs. McClure's pro se status, and out of an abundance of caution, the Court will review her untimely objections, which the Court will construe as a motion to reconsider.

Plaintiff argues that Magistrate Judge Hogan should have removed himself from this case when Plaintiff filed her March 21, 2003 affidavit of prejudice. She also asserts that it was improper for the Magistrate Judge to construe her affidavit as a motion for recusal. Plaintiff misapprehends the law concerning "removal" of a judicial officer based on alleged prejudice or bias.

The filing of an affidavit of bias or prejudice does not automatically require a judicial officer to remove him or herself

from the case.  28 U.S.C. §144 requires the judge to initially determine whether the affidavit is legally sufficient.  <u>City of Cleveland v. Cleveland Electric Illuminating Company</u>, 503 F.Supp. 368, 370 (N.D. Ohio 1980).  To meet the "legally sufficient" test, the bias or prejudice of which the party complains must be based on extra-judicial sources, and not simply on the course of prior judicial proceedings.  <u>United States v. Story</u>, 716 F.2d 1088, 1090 (6th Cir. 1983).  This doctrine applies equally to recusal under 28 U.S.C. §455.  "The standard for recusal is an objective one; hence the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held."  <u>United States v. Sammons</u>, 918 F.2d 592, 599 (6th Cir. 1990) (citation omitted).

    The Court has reviewed Plaintiff's allegations of "bias" against Magistrate Judge Hogan.  It is plain that Plaintiff is dissatisfied with his prior orders in this case.  Plaintiff does not allege any facts, particularly any facts based on extra-judicial sources, that might require recusal under 28 U.S.C. §144 or §455.  Plaintiff's motion to recuse Magistrate Judge Hogan (Doc. 73) is denied.

    Plaintiff's "Response" to this Court's August 27, 2003 Order seeks recusal of this Court because, according to Plaintiff, this Court is prejudiced or biased against Plaintiff.  She cites two examples: this Court's refusal to sanction Defendant for Mr. Zito's first affidavit (which Plaintiff characterizes as "perjury"), and this Court's "disregard" of defense counsel's

harassment, demonstrated on a recording of voicemail messages left for Plaintiff. These issues were fully addressed and resolved in the Court's order of July 26, 2002 (Doc. 28). Plaintiff offers no new arguments, and does not allege any facts (extra-judicial or otherwise) that require this Court's recusal.

For these reasons, the Court finds Plaintiff's objections to the Magistrate Judge's Report and Recommendation (Doc. 69) are

without merit and are overruled. Plaintiff's motion to recuse Magistrate Judge Hogan (Doc. 73) is denied.

2.  <u>Summary Judgment Motion</u>.

Magistrate Judge Hogan recommended that Defendants' motion for summary judgment be granted. This is a case-dispositive pleading, as the granting of the motion would terminate the litigation. Accordingly, the Court reviews de novo Magistrate Judge Hogan's Report and Recommendation concerning the summary judgment motion. See Fed. R. Civ. P. 72(b).

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but

... must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253 (1968)).  The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d 399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), <u>cert. denied</u>, <u>Superior Roll Forming Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  <u>Anderson</u>, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  <u>United States v. Diebold Inc.</u>, 369 U.S. 654, 655 (1962).

   The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether,

9

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted). The Supreme Court has held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...

Id. at 252. Hence the "'mere possibility'" of a factual dispute will not suffice. Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992), quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986).

Summary judgment is not appropriate simply because the weight of the evidence favors the moving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 472 (1962). The issue of material fact required "to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Cities

Serv. Co., supra, 391 U.S. at 288-89.

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

The Court will apply this standard to the Plaintiff's claims for promissory estoppel and defamation.

  A. Promissory Estoppel.

Ohio law is clear that an employee hired by her employer for an indefinite period is an employee at will. If there is no express agreement between the parties concerning the length of the employment, the relationship is "at will." Henkel v. Educational Research Council of America, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976). The definitive characteristic of an at will employment relationship is that either party - the employee or the employer - may terminate the relationship at any time, for any lawful reason.

In Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 103-104, 483 N.E.2d 150 (1985), the Ohio Supreme Court recognized

11

that exceptions to the at-will doctrine are required in the interests of justice. Two exceptions recognized in Mers are: (1) express or implied contract terms that restrict the employer's ability to freely terminate the relationship, and (2) promises made by the employer that give rise to an estoppel against the employer's right to terminate "at will."

Promissory estoppel is thus an exception to the general rule that at-will employment may be terminated at any time for any lawful reason:

> Where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted in and was detrimental to the employee.

Mers, 19 Ohio St.3d at 105.

Promissory estoppel does not apply to any "promise" that an employer might make about a particular at-will job. Rather, the promise must relate to the length of employment or the circumstances under which the employment relationship can be terminated. "A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory exception to the employment-at-will doctrine." Wing v. Anchor Media, Ltd. of Texas, 59 Ohio St. 3d 108, Syllabus, 570 N.E.2d 1095 (1991) (citations omitted); Penwell v. Amherst Hospital, 84 Ohio App.3d 16, 19, 616 N.E.2d

254 (1992). See also <u>Maxwell v. GTE Wireless Service Corp.</u>, 121 F. Supp. 2d 649, 661 (N.D. Ohio 2000) (employee must show that employer made some representation "which may reasonably be interpreted as limiting the employer's ability to terminate the employee at will" (citing <u>Penwell</u>)). The promise must be clear and unambiguous in its terms, and must relate to employment tenure. <u>Healey v. Republic Powdered Metals, Inc.</u>, 85 Ohio App.3d 281, 284-285, 619 N.E.2d 1035, 1036 (1992) (citation omitted).

Vague assurances of job security are insufficient to support a claim for promissory estoppel. See, e.g., <u>Rudy v. Loral Defense Systems</u>, 85 Ohio App.3d 148, 619 N.E.2d 449 (1993) (employee placed on four-year recall status was only promised that he **could** be recalled, not promised that he **would** be recalled or re-employed); <u>Shaw v. J. Pollock & Co.</u>, 82 Ohio App. 3d 656, 660, 612 N.E.2d 1295 (1992)(employee promised at least one year to try to make the employer profitable, but who was terminated after less than one year, was not promised a specific term of employment); <u>Wing</u>, 59 Ohio St. 3d at 110 (employee who was promised future equity participation in the company had not received a specific promise of continued employment); <u>Condon v. Body, Vickers & Daniels</u>, 99 Ohio App.3d 12, 649 N.E.2d 1259 (1994) (acceptance into five-year training program not a promise of five years of employment).

Here, the evidence construed in the light most favorable to Plaintiff shows that GMTI agreed to let Plaintiff work from 8 a.m. to 5 p.m., either at the time she started her employment or

13

soon thereafter, and that Plaintiff relied on that agreement. However, this agreement says nothing about continued employment, or even about how long Plaintiff could reasonably expect that she would be allowed to work those hours. Indeed, Plaintiff admitted that she did not discuss any time limit for her 8 a.m. to 5 p.m. schedule with GMTI:

> Q: Is it your opinion that you had a contract with GMTI that required them . . ., regardless of what their business needs were, they had to employ Shirley McClure from 8:00 to 5:00 forever unless she agreed otherwise, is that the contract?
>
> A: Well, see we didn't discuss – I don't know how to answer it because we didn't discuss the time limit.

(McClure Depo. p. 166)

A promise of certain working hours, made with no definite time limitation, does not and cannot reasonably be construed as a promise of continued employment, which could give rise to an exception to the at-will employment relationship. As the Ohio Supreme Court recently noted concerning the continuing vitality of the employment-at-will doctrine, "An at-will employee does not already have a right to come to work in the future at all, let alone under past terms of employment. Although both parties may very well contemplate continuation of the relationship, either may terminate it at any time." <u>Land Lake Employment Group of Akron v. Columber</u>, 101 Ohio St.3d 242, 246, n. 1, 2004 Ohio 786, ¶11 (2004).

The Magistrate's Report also found that Plaintiff failed to establish "detrimental reliance" on the Defendant's promise that Plaintiff could work from 8 a.m. to 5 p.m. Plaintiff objects to

this conclusion, arguing that she lost a job at her preferred hours, and that she suffered trauma, humiliation, embarrassment, and damage to her sense of self-worth by relying on Defendant's promise.  Plaintiff also argues that she was not seeking alternative employment opportunities during the time she worked for GMTI because she had no need to do so.  She asserts that she lost nine months of her working life by relying on Defendant's promise, thus establishing detrimental reliance.

Plaintiff's complaints about her trauma, humiliation, embarrassment or damage to her self worth, even accepting them as true for purposes of the motion for summary judgment, do not establish "detrimental reliance."  (Those complaints appear to be addressed to the "insubordination" issue discussed below.)  Detrimental reliance means that the employee has been promised **continued employment**, and has **relied** on that promise to her **detriment** by, for example, foregoing other employment opportunities.

Plaintiff contends that she relied on the promise of the working hours to forego other employment opportunities.  However, Plaintiff offers no evidence that her reliance actually caused her detriment, such as refusing another, better job offer.  She admits that her only other opportunity at the time she accepted GMTI's offer of employment was to continue to work for the temporary agency, which did not guarantee any income at all.  She admits that she did not seek other employment and did not turn down other offers of employment during her tenure with GMTI.

15

Thus, even if the promise itself - that Ms. McClure could work from 8 a.m. to 5 p.m. - is assumed to be a promise of continued employment (which the Court does not assume), Plaintiff has not established detrimental reliance upon that promise.

Summary judgment is therefore properly granted to Defendants on Plaintiff's claim of promissory estoppel.

B. <u>Defamation.</u>

Plaintiff alleges that the Defendants defamed her because they accused her of "insubordination." She argues that the defamatory statement was published to the Ohio Bureau of Employment Services, which denied her unemployment compensation because of "insubordination."

Under Ohio law, a defamation claim requires Plaintiff to establish each of the following: (1) a defamatory statement (2) made about the plaintiff, (3) which was published to a third person without a privilege to do so, (4) the defendant was at fault for making the publication, and (5) the statement was defamatory per se or caused special harm. Statements which affect a person in his or her business or profession, such as statements which impute disloyalty or insubordination, are considered defamatory per se. <u>Liebson v. Ohio Dep't of Mental Retardation & Dev. Disabilities</u>, 61 Ohio Misc.2d 750, 755, 584 N.E.2d 1363, 1366 (1989). The Court will assume for purposes of summary judgment that Zito's statement that Plaintiff was "insubordinate" was defamatory per se. The disputed elements here are (3) and (4), as Plaintiff has satisfied elements (1),

(2) and (5).

    Publication: Plaintiff's evidence establishes that the word "insubordination" was used twice in writing concerning Plaintiff. (She makes no allegation and offers no evidence of any oral repetition of the word to anyone.) The first document is the email communication from Dan Zito to Plaintiff on November 5, 1999, when Zito wrote her that her conduct "amounted to insubordination." Plaintiff admits that the email from Zito was sent only to her and not copied to anyone else. She has no evidence that the email was published by Zito or by the Defendants to any third party.[2] Therefore, she cannot establish a claim for defamation based on the Zito email.

    The second document is the order from the Ohio Bureau of Employment Security. Plaintiff argues that the Bureau concluded that she was "insubordinate" because the Defendants published that statement to the Bureau.[3] The Court will assume that Plaintiff would be able to establish that fact at trial. Even so, Ohio law is clear that statements and communications made during unemployment proceedings are absolutely privileged, and cannot form the basis for a defamation claim. See Barilla v. Patella,

---

[2] Plaintiff admits that since she left the employ of GMTI, she has enjoyed good job references. She also accepted a permanent job with Kroger Company beginning in June 2000, and testified that Kroger knows nothing about the insubordination remark.

[3] R.C. 4141.29(d)(2)(a), upon which the Order denying benefits relies, does not use the word "insubordination" but refers to "just cause" for termination as a basis for denial of unemployment benefits.

17

144 Ohio App.3d 524, 534, 760 N.E.2d 898 (2001): "Communications made during unemployment proceedings, which are quasi-judicial in nature, are subject to an absolute privilege, and may not be used in subsequent actions."  See also, Horsley v. Wal-Mart, Inc., 1997 Ohio App. LEXIS 5988, at *9-10 (Ohio App. 1997).  The privilege applies even when the statement is untrue.  Pease Co. v. Huntington National Bank, 24 Ohio App.3d 227, 232, 495 N.E.2d 45 (1985).

Plaintiff then argues that there should be no privilege for what she calls "an outright lie."  She argues that the publication of the word "insubordination" to the Employment Office was not relevant to her application for unemployment compensation, and thus not entitled to the privilege.  The Court disagrees.

The Oxford English Dictionary (Second Edition 1989) defines "insubordination" as "absence of subordination or submission; resistance to or defiance of authority; refusal to obey orders; refractoriness, disobedience."  There is no dispute that Natalie Dennis was in a position of authority concerning Plaintiff's job with GMTI.  There is no dispute that Plaintiff refused to accept the working hours requirement imposed by GMTI through Dennis.  GMTI's communication of those facts to the Employment Office, even with the "insubordination" label attached, is clearly "relevant" to the unemployment proceedings.  Moreover, Plaintiff participated in those proceedings, and had the opportunity to present her evidence and her understanding of the situation that led to her termination.  There is nothing in the record that can overcome the

absolute privilege accorded under Ohio law to an employer's statements made during the course of unemployment compensation proceedings.

Without a "publication" of the defamatory statement, Plaintiff cannot succeed on her claim for defamation. Therefore, summary judgment is appropriately granted to Defendants on this claim.

## CONCLUSION

Plaintiff's motion for recusal of Magistrate Judge Hogan is denied. Plaintiff's objections to Magistrate Judge Hogan's Report and Recommendation are overruled. Defendants motion for summary judgment is hereby GRANTED.

This case is closed.

DATED: June 10, 2004                s/ Sandra S. Beckwith
                                     Sandra S. Beckwith
                                     United States District Judge